UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROBIN BROWN

        Plaintiff,

      v.                         **REPORT AND RECOMMENDATION**
                                  08-CV-1163 (LEK)

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.    Introduction

Plaintiff Robin Brown brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI").[1] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

For the reasons set forth below, the Court finds that the Commissioner's decision contains legal error and is not supported by substantial evidence. Therefore, the Court recommends that Plaintiff's Motion for Judgment on the Pleadings be granted in part and Defendant's Cross-Motion for Judgment on the Pleadings be denied.[2]

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated October 2, 2009.
[2] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as

## II.     Background

Plaintiff protectively applied for SSI on January 11, 2006, alleging an onset date of January 11, 2006 (R. at 64, 76).[3] Plaintiff alleges disability due to obesity, asthma, fatigue, anxiety, depression, and paranoia as well as chronic pain resulting from back, leg, and knee impairments. Her application was denied initially on June 12, 2006 (R. at 47-48). Plaintiff filed a request for a hearing on July 14, 2006 (R. at 49).

On April 10, 2008, Plaintiff appeared before the ALJ (R. at 372-87). The ALJ considered the case *de novo* and, on April 25, 2008, issued a decision finding Plaintiff not disabled (R. at 19-29). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on October 15, 2008 (R. at 3-6). On October 29, 2008, Plaintiff filed this action.

Based on the entire record, the Court recommends remand because the ALJ failed to fully develop the record and erred in applying the treating physician rule.

## III.     Discussion

### A.     Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the

---

if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).
[3] Citations to the underlying administrative record are designated as "R."

ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[4] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

---

[4] This five-step process is detailed as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

**B.     Analysis**

### 1.  The Commissioner's Decision

In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff had not engaged in substantial activity since the date she applied for SSI, January 11, 2006 (R. at 21); (2) Plaintiff's musculoskeletal and mental impairments, as well as her obesity, were severe (R. at 21); (3) Plaintiff's impairments did not either singly, or in combination, meet or equal a listing in 20 CFR Part 404, Subpart P, Appendix I (R. at 21); (4) Plaintiff retained "the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that the claimant [wa]s limited to understanding, remembering and carrying out simple instructions and directions" (R. at 22); (5) Plaintiff's allegations "concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not credible to the extent they [we]re inconsistent with the residual functional capacity" (R. at 23-24); (6) Plaintiff had no past relevant work experience (R. at 28); (7) Plaintiff was forty-four years old and considered a younger individual at the time of her application (R. at 28); (8) Plaintiff "ha[d] at least a high school education and [wa]s able to communicate in English" (R. at 28); (9) "[U]sing the Medical-Vocational Rules as a framework support[ed] a finding that the claimant [wa]s 'not disabled,' whether or not the claimant ha[d] transferable job skills" (R. at 28). Ultimately, the ALJ found that Plaintiff was not under a disability at any time through the date of his decision (R. at 29).

### 2. Plaintiff's Claims:

Plaintiff argues that the ALJ's decision contained legal error and was not supported by substantial evidence. Specifically, Plaintiff argues that a) Plaintiff's right to representation was not validly waived; b) the ALJ failed to conduct a full and fair hearing; c) the ALJ erred in applying the treating physician rule; d) the ALJ erred in analyzing Plaintiff's credibility; e) the ALJ failed to consider Plaintiff's obesity; f) the ALJ erred in failing to find Plaintiff met Listings 12.04 and 12.06; g) the ALJ erred in finding Plaintiff capable of "perform[ing] light work because of her non-exertional limitation of pain;" h) the ALJ failed to include the side effects of her medications in her residual functional capacity ("RFC"); i) the ALJ erred in failing to obtain testimony from a vocational expert ("VE").

### a) Plaintiff Adequately Waived Her Right to Representation

Plaintiff argues that she failed to validly waive her right to representation at the hearing. Plaintiff's Brief, pp. 26-31.

Although Plaintiff is currently represented by counsel, she appeared *pro se* at the hearing held on April 10, 2008 (R. at 372-87).

"[A] reviewing court must be satisfied that the claimant has had 'a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act.'" Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980) (quoting Gold v. Sec'y of Health, Ed. & Welfare, 463 F.2d 38, 43 (2d Cir. 1972). "While the law does not require the assignment of counsel to represent them in administration proceedings, Social Security claimants are 'entitled to be represented by counsel at the hearing and the ALJ must ensure that the claimant is aware of this right.'" Crysler v. Astrue, 563 F.Supp.2d

418, 430 (N.D.N.Y. 2008) (quoting Robsinon v. Sec'y of Health & Human Servs., 733 F.2d 255, 257 (2d Cir. 1984)). The Act requires that:

> [t]he Commissioner of Social Security shall notify each claimant in writing, together with the notice to such claimant of an adverse determination, of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner of Social Security. Such notification shall also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge.

42 U.S.C. §§ 406(c), 1383(d)(2)(D). "Once a claimant has been adequately notified of the right to proceed with a representative, a claimant may waive that right." Osorio v. Barnhart, 2006 WL 1464193, at *8 (S.D.N.Y. May 30, 2006). This waiver "must be made knowingly and voluntarily." Rocker v. Apfel, 2000 WL 1459846, at *6 (S.D.N.Y. Sept. 29, 2000) (internal citations removed); see also, Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 509 (2d Cir. 2009) (finding Plaintiff "*knowingly and voluntarily* waived [her] right at the hearing before the ALJ") (emphasis added).

Here, Plaintiff was adequately notified of her right to counsel. On June 12, 2006, the SSA informed Plaintiff that her initial application for SSI had been denied (R. at 47-48). In that letter, the following was stated:

> [y]ou can have a friend, lawyer or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your Local Social Security office has a list of groups that can help you with your appeal.
>     If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it. And if you hire a lawyer, we will withhold up to 25 percent of any past due Social Security benefits to pay toward the fee. We do not withhold money from SSI benefits to pay your lawyer.

(R. at 48). Plaintiff was again informed of her right to a representative in the hearing notice sent to her by the ALJ (R. at 54-59). In that form, the following was stated: "[i]f

7

you want to have a representative, please get one right away. You should show this notice to anyone you may appoint. You or that person should also call this office to give us his or her name, address, and telephone number" (R. at 28).

This case is similar to a previous decision from the Northern District. The Court in Chrysler v. Astrue, found that identical language as quoted above, "comports with the minimal requirements imposed by the Act in connection with advice regarding legal representation." Chrysler v. Astrue, 563 F.Supp.2d 418, 431 (N.D.N.Y. 2008); see also, Lamay, 562 F.3d at 509 (holding that supplying Plaintiff with notices containing similar language as quoted above, as well as a list of organizations providing legal services, met the requirements of 42 U.S.C. §§ 406(c), 1383(d)(2)(D)).

At the hearing, the following conversation took place between the ALJ and Plaintiff:

> ALJ: All right. I'm Judge Stephan, Ms. Brown. I'm going to talk to you first about your right to be represented. There are benefits to having representation, and I have an obligation to explain them to you. It means you can have an attorney, someone who knows this area of the law. They know the requirements for the benefits you're seeking. They know about the evidence that's important in these matters, and they know how to get that evidence. Now, there's no requirement that you have representation, but if you choose not to have representation, you have waived your right. In other words, you can't get it back. If you don't like my decision, you can't have another hearing with an attorney.
> CLMT: Right.
> ALJ: If you'd like to get a brief postponement, I could postpone your case for a brief time so you can get representation. Otherwise, you can proceed today. Most people can't afford to have a lawyer so we have a system whereby you don't pay your lawyer unless you win. If you win and you have back benefits, they take a portion of the back benefits. There are also legal aid organizations in this area who are very active and very good at what they do here. I can refer them to you. Depending on your financial circumstances which I have no idea about, they might be able to

>   assist you as well. Now, what would you like to do? Would you like to proceed today, or would you like to get a brief postponement so you can have representation?
> CLMT: I'll just proceed. I had applied for legal aid, and they just told me they didn't have enough attorneys available.
> ALJ: Did you want to wait and try again?
> CLMT: No, just go ahead.
> ALJ: Okay. You don't want to try to get a private attorney?
> CLMT: No.

(R. at 374-75). Thus, Plaintiff was asked repeatedly if she would like to retain the services of an attorney. In each instance, Plaintiff responded that she wished to continue with the hearing without a representative. There is nothing in the hearing to suggest that Plaintiff did not fully understand her right to a representative. Moreover, if Plaintiff had difficulty comprehending her right to counsel, she had an obligation to state as much. See Timmons v. Sullivan, 1989 WL 156300, at *8 (S.D.N.Y. Dec. 19, 1989) ("[Plaintiff] cannot assert a denial of due process of law on the basis of waiving his counsel when he affirmatively represented to the ALJ that [he] understood his waiver of counsel and signed the form so indicating this comprehension."). Thus, the Court finds that Plaintiff was properly made aware of her right to representation and knowingly and voluntarily waived that right.

### b) The ALJ Failed to Conduct a Full and Fair Hearing

Plaintiff argues that the ALJ failed in his duty to conduct a full and fair hearing by failing to fully develop the record. Plaintiff's Brief, pp. 26-31.

"The ALJ has a duty to adequately protect a *pro se* claimant's rights 'by ensuring that all of the relevant facts [are] sufficiently developed and considered.'" Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990) (quoting Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980)) (emphasis in original). The ALJ's duty to develop the record is

heightened when Plaintiff appears *pro se*. Ericksson v. Comm'r of Soc. Sec., 557 F.3d 79, 83 (2d Cir. 2009) (citing Cruz, 912 F.2d at 11) ("[T]he first ALJ was under a heightened duty to develop the record in order to ensure a fair hearing because Ericksson was appearing *pro se*."). Indeed, "[a] hearing may be characterized as 'unfair' where the ALJ failed to discharge his obligation to develop a complete record." Chamberlain v. Leavitt, 2009 WL 385401, at *7 (N.D.N.Y. Feb. 10, 2009).

"The duty to develop the record is 'particularly important' when obtaining information from a claimant's treating physician due to the 'treating physician' provisions in the regulations."  Dickson v. Astrue, 2008 WL 4287389, at *13 (N.D.N.Y. Sept. 17, 2008) (citing Devora v. Barnhart, 205 F.Supp.2d 164, 172 (S.D.N.Y. 2002)). Because of this 'particularly important' duty, the ALJ has an affirmative obligation to make reasonable efforts to obtain from Plaintiff's treating physicians any necessary reports, including an assessment of Plaintiff's functional limitations.  Dickson, 2008 WL 4287389, at *13.

At the time of the ALJ's decision, the record failed to contain any functional assessments or medical source statements from any of Plaintiff's treating sources.[5] Indeed, apart from the opinions of the SSA consultative sources, the record is a compilation of treatment notes from Plaintiff's sources. There is no indication that the ALJ attempted to obtain a functional assessments or medical source statements from any of Plaintiff's treating sources.

---

[5] On July 29, 2008, Ms. Elnora Mills, Plaintiff's psychiatric nurse practitioner, completed a form entitled "Medical Source Statement of Ability to do Work-Related Activities (MENTAL)" (R. at 11-12). Also on that date, Ms. Mills wrote a letter to Plaintiff's attorney in which she made various opinions concerning Plaintiff's mental functioning (R. at 9-10). Both documents were submitted to the Appeals Council after the ALJ's decision (R. at 3-6). Thus, the ALJ did not have access to these opinions at the time of his decision.

10

There are several treating sources in the record whose opinions are worth obtaining. For example, Dr. Bonnabesse treated Plaintiff from September 7, 2005 through April 4, 2006 (R. at 224, 212). Dr. Bonnabesse was the physician treating Plaintiff's pain (R. at 244). Dr. Bonnabesse not only prescribed narcotics for Plaintiff but also completed a series of steroid injections to help relieve the pain in her back and legs (R. at 129-43, 211-226). Plaintiff ended her relationship with Dr. Bonnabesse after losing her insurance (R. at 379).

Plaintiff underwent gastric bypass surgery on October 18, 2002 (R. at 124). Dr. Hixson performed the surgery. Id. Dr. Hixson, along with his registered nurse, continued to see Plaintiff through October 10, 2006 (R. at 310). There is no indication from the record that the ALJ attempted to contact Dr. Hixson for an opinion of Plaintiff's functional limitations, or a medical source statement.

The record also appears to be missing treatment notes from Dr. Ultee, Plaintiff's primary care physician. Plaintiff testified that Dr. Ultee[6] was her "regular primary doctor" (R. at 380). The record corroborates Plaintiff's statement concerning her relationship with Dr. Ultee. For example, on January 21, 2008, Plaintiff was admitted to the emergency room for a urinary tract infection (R. at 325). Plaintiff was discharged later that day with instructions to follow up with Dr. Ultee (R. at 326). However, the record contains only two treatment notes from Dr. Ultee: October 6, 2005, Plaintiff's first visit with Dr. Ultee (R. at 243); and November 17, 2005 (R. at 242). Thus, the record appears to be missing nearly all of Plaintiff's treatment history with Dr. Ultee. There is

---

[6] Plaintiff testified that her "regular primary doctor" was "Dr. Alti" (R. at 380). The transcriber indicted that the name "Alti" was spelled phonetically. Id. Thus, the Court assumes Plaintiff was in fact referring to Dr. Ultee because the Court could find no reference to a Dr. Alti in the record.

no indication that the ALJ attempted to obtain either treatment notes, a medical source statement, or a functional assessment from Dr. Ultee.

Because Plaintiff appeared *pro se*, the ALJ failed in his duty to adequately develop the record by contacting Plaintiff's treating sources for assessments of Plaintiff's functional limitations. See Crysler, 563 F.Supp.2d at 435 ("Under these circumstances, particularly in view of plaintiff's *pro se* status, the ALJ was dutibound [sic] to recontact . . . [Plaintiff's treating physician] to obtain an assessment concerning plaintiff's RFC.").

Moreover, the hearing itself lasted a mere fourteen minutes constituting only thirteen pages of the record (R. at 374-87). Plaintiff was the sole witness. During that time, the ALJ failed to ask Plaintiff about her ability to stand, walk, sit, lift, carry, push, and pull. Thus, the Court cannot find that the ALJ adequately fulfilled his duty to provide Plaintiff with a full and fair hearing. See Cruz, 912 F.2d at 11-12 ("The scant record herein, which consists of a thirteen-page transcript, reveals a host of lost opportunities to explore the facts."); Almonte v. Apfel, 1998 WL 150996, at *8 (S.D.N.Y. Mar. 31, 1998) (remanding, in part, because the "ALJ . . . conducted a 16-minute hearing (which also took up barely 13 pages of transcript) in which he failed to question [the claimant] about her claims of disability during that period"); Mann v. Chater, 1997 WL 363592, at *4-5 (S.D.N.Y. June 30, 1997) (noting that that in "determining whether a claimant received a fair and adequate hearing," the court may consider the number of witnesses and the length of the hearing).

Because Plaintiff appeared *pro se* at the time of the hearing and decision, the Court cannot find that the ALJ adequately developed the record and afforded Plaintiff a

full and fair hearing. Therefore, the Court recommends remand to allow the ALJ an opportunity to re-contact Plaintiff's treating sources in an attempt to obtain medical source statements and/or functional assessments of her limitations. Moreover, remand will offer the ALJ an opportunity to review the opinions offered by Plaintiff's treating nurse practitioner of psychiatry, Ms. Mills.

### c) The ALJ Erred in Applying the Treating Physician Rule

Plaintiff argues that the ALJ erred in failing to grant controlling weight to her treating sources. Plaintiff's Brief, pp. 23-26.

According to the "treating physician's rule,"[7] the ALJ must give controlling weight to the treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. Under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency

---

[7] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court.  See de Roman, 2003 WL 21511160, at *9 (citing C.F.R. § 404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

Here, the ALJ failed to state the weight he granted to any of the opinions from Plaintiff's treating sources. The ALJ's failure to articulate the weight he granted to Plaintiff's treating sources is error. See Rodriguez v. Astrue, 2009 WL 637154, at *27 (finding error where the ALJ simply stated he was not granting Plaintiff's treating physicians controlling weight); see also 20 C.F.R. § 404.1527(d) ("How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive.").

Moreover, although not argued by Plaintiff, the ALJ failed to state the weight he granted to the SSA consultative sources. This also is error. 20 C.F.R. § 404.1527(f)(2)(ii) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . .").

Based on the foregoing, the Court recommends remand to allow the ALJ an opportunity to state the weight he afforded to the medical opinions of record.

### d)  The ALJ's Credibility Analysis is Necessarily Flawed

Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility. Plaintiff's Brief, pp. 14-16, 19-23.

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to accept without question the credibility of such subjective evidence.'" Martone v. Apfel, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). In analyzing credibility, the ALJ must first determine whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); S.S.R. 96-7p, 1996 WL 374186, at *2. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. S.S.R. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c); Borush, 2008 WL 4186510, at *12. Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the regulations.[8] 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

If the ALJ finds Plaintiff's pain contentions are not credible, he must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, 2008 WL

---

[8] The listed factors are: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y. 1987)).

Here, the ALJ completed the two-step process by finding that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below" (R. at 24).

Throughout his decision, the ALJ also discussed several of the factors. For example, the ALJ discussed various treatments Plaintiff has undergone as well as medications she has taken to alleviate her pain (R. at 23, 27, 28). The ALJ also discussed Plaintiff's daily activities (R. at 23-27). Finally, the ALJ noted Plaintiff's statements concerning the side effects of her medications (R. at 23, 27, 28).

Based on the record as it currently stands, the ALJ engaged in a thorough credibility analysis with the information he had based on the record he developed. However, as previously discussed, the ALJ erred in failing to fully develop the record. Supra Part III.B.2.b. Thus, the ALJ's credibility assessment was necessarily flawed because he lacked significant, available evidence from Plaintiff's treating sources, as discussed above. Therefore, on remand, the ALJ must necessarily re-evaluate Plaintiff's credibility once a complete record has been obtained.

### e) The ALJ Considered Plaintiff's Obesity in His Decision

Plaintiff appears to argue that the ALJ failed to consider the limiting effects of her obesity throughout the sequential evaluation. Plaintiff's Brief, pp. 12-14.

An ALJ is instructed to consider impairments of which a claimant has complained or the ALJ has received evidence. See 20 C.F.R. § 404.1512 ("We will consider only impairment(s) you say you have or about which we receive evidence.").

At step two, the ALJ found that Plaintiff's obesity was severe (R. at 21). In determining Plaintiff's RFC, the ALJ "conclude[d] that due to the combination of back pain and obesity the claimant is limited to lifting and carrying no more than 10 pounds frequently and 20 pounds occasionally" (R. at 28). Thus, it is clear from the ALJ's decision that he considered Plaintiff's obesity in finding her not disabled.

### f) The Court Cannot Determine Whether the ALJ Erred in Failing to Find Plaintiff Met a Mental Listing

Plaintiff argues that the ALJ erred in failing to find she met either Listing 12.04 or 12.06. Plaintiff's Brief, pp. 16-17.

Because the ALJ did not have access to the opinions by Plaintiff's treating psychiatric nurse practitioner, Ms. Mills, the Court cannot determine whether the ALJ's findings at step three of the sequential analysis were supported by substantial evidence. Accordingly, the Court recommends remand to allow the ALJ an opportunity to properly assess whether Plaintiff meets listing 12.04.

### g) The ALJ's Credibility Analysis and RFC Determination are Necessarily Flawed

Plaintiff argues that the ALJ erred in finding her capable of "perform[ing] light work because of her non-exertional limitation of pain." Plaintiff's Brief, pp. 14-16. Plaintiff appears to argue both that the RFC is not supported by substantial evidence and that the ALJ erred in evaluating her credibility. Id.

The Court has previously recommended remand for failure to properly develop the record. Supra Part III.B.2.b. Thus, the ALJ was lacking information from Plaintiff's treating physicians when he analyzed Plaintiff's credibility and determined her RFC. As such, both the RFC determination and the credibility analysis are necessarily flawed. Therefore, on remand, the ALJ must necessarily re-evaluate the RFC and Plaintiff's credibility once a complete record has been compiled.

### h) The Court Cannot Determine Whether the ALJ Erred in Failing to Include the Side Effects of Medications in the RFC

Plaintiff argues that the ALJ erred in failing to include the side effects of Plaintiff's medications in the RFC. Plaintiff's Brief, p. 18. Because of the previous errors, the Court cannot determine whether the ALJ's decision to omit Plaintiff's alleged side effects from the RFC was supported by substantial evidence. On remand, the ALJ is instructed to consider the side effects of Plaintiff's medications in reaching a conclusion on the RFC.

### i) The Court Cannot Determine Whether the ALJ Erred in Failing to Obtain Testimony from a VE

Plaintiff argues that the ALJ erred in not consulting a VE before finding her not disabled. Plaintiff's Brief, pp. 17-18.

The use of the Medical-Vocational Guidelines is inappropriate "where the claimant's work capacity is significantly diminished beyond that caused by his exertional impairment . . . . '[S]ignificantly diminish' [] mean[s] the additional loss of work capacity beyond a negligible one or, . . . one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Bapp v. Bowen, 802 F.2d 601, 605-606 (2d Cir. 1986). "If the ALJ finds that [Plaintiff's] ability is significantly diminished, then the Commissioner should be required to present the testimony of a

vocational expert or other evidence concerning the existence of jobs in the national economy for an individual with [plaintiff's] limitations." <u>Pratts v. Chater</u>, 94 F.3d 34, 39 (2d Cir. 1996).

Because of the previous errors, the Court cannot determine whether the ALJ's decision to follow the Medical-Vocational Guidelines was supported by substantial evidence.

## IV.   Conclusion

Based on the foregoing, the Court recommends that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:      Syracuse, New York
            November 30, 2009

## ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);   *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);   *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge


DATED:    Syracuse, New York
          November 30, 2009